David S. Ratner, Esq. (SBN 316267)
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Fax: (925) 891-3818
Email: david@davidratnerlawfirm.com

Rachel Kaufman (SBN 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRYAN EDWARDS,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**EHEALTH INC.,** a Delaware corporation,<br><br>*Defendant.* | Case no.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Bryan Edwards ("Edwards" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant eHealth, Inc. ("eHealth" or "Defendant") to stop Defendant from violating the Telephone Consumer Protection Act by making unsolicited, prerecorded calls and other illicit telemarketing calls to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by eHealth's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1. eHealth operates an online insurance marketplace from which consumers can purchase health insurance, life insurance, and other insurance products.[1]

2. To solicit business, eHealth relies on telemarketing that is done either by eHealth directly, or through lead generators that eHealth pays to generate leads.

3. This telemarketing includes the making of prerecorded calls by or on behalf of eHealth to consumers without their express written consent.

4. In addition, eHealth has failed to implement sufficient policies and procedures to maintain an internal do not call list and to ensure that consumers that specifically request that eHealth stop calling do not receive any more calls.

5. Plaintiff Edwards received over 100 unsolicited, prerecorded calls to his cellular phone by or on behalf of eHealth, despite at least 3 separate instances when Edwards specifically asked an agent for the calls to stop.

6. In response to these calls, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to stop making prerecorded voice sales calls to consumers without their consent and to implement adequate policies and procedures for maintain an internal do not call list and preventing calls to consumers that have requested that calls stop, as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

7. Plaintiff Edwards is a Nashville, Tennessee resident.

8. Defendant eHealth is a Delaware corporation headquartered in Santa Clara, California. eHealth conducts business throughout this District, the State of California, and throughout the United States.

---

[1] https://www.linkedin.com/company/ehealthinsurance/about/

## JURISDICTION AND VENUE

9. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

10. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District, does significant business here, and because the wrongful conduct giving rise to this case occurred in and/or was directed from this District.

## COMMON ALLEGATIONS

### eHealth Markets its Products by Placing Unsolicited Prerecorded Calls to Consumers

11. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all … prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

12. Yet in violation of this rule, Defendant and/or its agents fail to obtain express written consent before making prerecorded voice sales calls to consumers such as Plaintiff.

13. The Federal Communication Commission has instructed that sellers such as eHealth many not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may

have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).*

14. Even if eHealth is not placing the calls directly, eHealth benefits financially from each sale it acquires through the agents that place the calls.

15. eHealth's prerecorded voice calls direct consumers to either press '2' to speak to a live agent or press '9' to be opted-out.

16. The prerecorded messages offer insurance from "A-rated insurers."

17. There are many complaints posted online from consumers regarding calls from or on behalf of eHealth. These complaints also include references to the difficulty consumers have faced getting the calls to stop:

- "I have received constant calls from ehealthinsurance call center employees. I never requested any information from them or any of their representatives…. The representative said they would take me of of their call list. Unfortunately, so did the 3rd representative I talked to and the 7th representative I spoke to on 12/15/17."[2]

- "This company has been harassing me for 2 months now. I have told them to take my number off their calling list and they hang up on me. I have health insurance. Leave me alone."[3]

- "3 months of harassment! Calls came in at all times and all days. I am on the do not call list and I have NO IDEA how this company got my information. I would not trust them with ANYTHING!"[4]

- "I am being bombarded with at least 20 calls a day soliciting insurance quotes and polices. Do NOT do business with this company. It's a scam. I've called them and asked them to stop and they told me I must have visited a different website and

---

[2] https://www.bbb.org/us/ca/mountain-view/profile/insurance-companies/ehealthinsurance-services-inc-1216-359700/customer-reviews
[3] https://www.expertinsurancereviews.com/insurance-company-reviews/ehealthinsurance-review/
[4] *Id.*

provided my information to someone other than them… even though EVERY SINGLE AGENT that calls identifies themselves as an E Health Agent."[5]

- "…they do NOT care about your being on the 'do not call' registry. They are about an unethical as any company comes & the calls will be incessant DAILY."[6]

- "Robocall harassment all day long Monday through Friday! I would not do business with this company if my life depended on it!!!!"[7]

- "Absolute SCAM. They will incessantly call you up to 50+ times a day. When you block their numbers, you'll get even more calls from randomly generated numbers. When you ask to take off the call list, they abruptly hang up on you. 20 minutes later, expect another call.."[8]

- "I literally get up to 15 calls from these guy a day. Block one number and another will call in 20 minutes. This is full on harassment."[9]

- "Hate those spam calls you get? This is one of eHealthInsurance employees contributing to the problem…"[10]

- "This company is terrible. They have literally been calling for the last month… probably 70-100 phone calls no exaggeration! I hae told them I already have insurance, take me off the list and they won't. They just keep calling! Someone please shut down this terrible company who harasses people."[11]

## PLAINTIFF'S ALLEGATIONS

### eHealth Placed Prerecorded Calls to Plaintiff Without His Consent, Despite Requests for the Calls to Stop

18. In early March 2019, Plaintiff Edwards began receiving prerecorded calls to his cellular phone from Defendant.

19. The messages were pertaining to the purchase of health insurance for which Plaintiff could press '2' to speak to a live agent, or press '9' to be opted-out.

---

[5] *Id.*
[6] *Id.*
[7] https://www.trustpilot.com/review/ehealthinsurance.com?languages=en&stars=1&stars=2
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

20. Plaintiff pressed '9' multiple times, but the calls continued. When he would press '9', the line would simply go dead.

21. Frustrated by the fact that the calls had not stopped, and because he was receiving multiple calls daily, Plaintiff pressed '2' to speak to a live agent. When he asked for the calls to stop, the agent simply hung up.

22. Plaintiff repeated this process at least two more times, in which he asked a live agent to stop calling him, but the calls continued to flood in.

23. For example, on March 19, 2019 and March 20, 2019, Plaintiff received over 10 prerecorded voice message calls from eHealth that went to his voicemail:

| Greeting | Voicemail | Edit |
|---|---|---|
| (678) 919-3485<br>Mableton, GA | 1:44 PM<br>0:08 | ⓘ |
| (678) 919-3466<br>Mableton, GA | 12:09 PM<br>0:05 | ⓘ |
| (678) 919-3466<br>Mableton, GA | 12:07 PM<br>0:06 | ⓘ |
| (678) 919-3466<br>Mableton, GA | 12:07 PM<br>0:08 | ⓘ |
| (678) 919-3443<br>Mableton, GA | 9:44 AM<br>0:05 | ⓘ |
| (678) 919-3395<br>Mableton, GA | 7:18 AM<br>0:04 | ⓘ |
| (678) 919-3392<br>Mableton, GA | 7:10 AM<br>0:08 | ⓘ |
| (678) 919-3383<br>Mableton, GA | 6:03 AM<br>0:04 | ⓘ |
| (678) 919-3341<br>Mableton, GA | Yesterday<br>0:08 | ⓘ |
| (678) 919-3317<br>Mableton, GA | Yesterday<br>0:08 | ⓘ |
| (678) 919-3314 | Yesterday | ⓘ |

24. On March 20, 2019 Plaintiff answered a call from Defendant using phone number 678-919-3485 at 3:41 PM. Plaintiff pressed '2' and spoke with a live agent, going along with the solicitation to confirm the telemarketer's identity. After a couple of minutes, Plaintiff confirmed that the call he received was from eHealth and was told the website address ehealthinsurance.com.

25. As with the majority of the calls that Plaintiff received, 678-919-3485 is a spoofed number that cannot be called back.

26. In total, Plaintiff received over 100 unsolicited, prerecorded calls to his cellular phone, despite multiple opt-out attempts that included pressing '9' to opt-out and at least 3 instances when Plaintiff asked a live agent to remove his number from Defendant's call list.

27. Plaintiff's cellular phone is used for personal use only and is not associated with a business.

28. Plaintiff does not have a relationship with eHealth, or any of its affiliated companies, nor has he ever consented to any contact from Defendant.

29. Simply put, eHealth did not obtain Plaintiff's prior express written consent to place any solicitation telephone calls to him using a prerecorded voice message.

30. Defendant's unauthorized telephone calls harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Edwards's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

31. Seeking redress for these injuries, Edwards, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded voice calls to landline and cellular phone and numbers.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

32. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following t Classes:

> **Prerecorded Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or agents acting on behalf of Defendant) called, (2) using a prerecorded voice message, (3) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or agents acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

33. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

34. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable. Plaintiff is a member of both Classes.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) whether Defendant utilized a prerecorded voice message when placing calls to Plaintiff and the members of the Prerecorded Class;

    (b) whether Defendant systematically made multiple telephone calls to Plaintiff and consumers after Defendant was asked to stop calling;

    (c) whether Defendant placed prerecorded voice message calls to Plaintiff and members of the Classes without first obtaining consent to make the calls;

    (d) whether Defendant's conduct constitutes a violation of the TCPA; and

    (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

36. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

37. **Superiority**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by

Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Edwards and the Prerecorded No Consent Class)**

38. Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

39. Defendant and/or its agents made unwanted solicitation telephone calls to Plaintiff and the other members of the Prerecorded No Consent Class using a prerecorded voice message.

40. These prerecorded voice message calls were made *en masse* without the consent of the Plaintiff and the other members of the Prerecorded Class.

41. Defendant's conduct was negligent or wilful and knowing.

42. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Prerecorded are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Edwards and the Internal Do Not Call Class)**

43. Plaintiff Edwards repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference.

44. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the

10

following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

45. Defendant or its agent made prerecorded marketing calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

46. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

47. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call List Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Edwards, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial.

Respectfully Submitted,

**BRYAN EDWARDS**, individually and on behalf of those similarly situated individuals

Dated: April 17, 2019

/s/ David S. Ratner
David S. Ratner, Esq. (SBN 316267)
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Fax: (925) 891-3818
Email: david@davidratnerlawfirm.com

Rachel Kaufman (SBN 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*